UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM T. MORRISON, | ) | Case No. 4:19-cv-2676 |
| Petitioner, | ) ) ) | JUDGE SARA LIOI |
| -vs- | ) ) ) | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| WARDEN, MARK K. WILLIAMS, | ) ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) ) | **& ORDER** |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to 28 U.S.C. Section 636(b), Fed. R. Civ. P. 72, and LR. 72.1, and for general pretrial supervision pursuant to Local Rule 72.2(a).

Plaintiff William T. Morrison ("Plaintiff") filed his original Complaint for Declaratory Judgment on November 14, 2019, alleging that Federal Bureau of Prisons Warden Mark Williams at FCI Elkton ("Defendant") violated his Eighth Amendment right to be free from cruel and unusual punishment by suspending movie watching privileges for an entire unit when contraband was discovered in one cell of that unit. (ECF No. 1). Plaintiff also avers that short staffing, "self-policing," "mass punishment," and suspending movie watching privileges without due process violated his due process rights, the Eighth Amendment, and the Administrative Procedures Act, 5 U.S.C. § 702. (ECF No. 1). Finally, he challenges the administrative exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), specifically concerning the Warden's failure to establish a time frame for informal resolution and generally averring that the administrative remedy scheme at FCI Elkton is dysfunctional.

1

On May 21, 2020, Plaintiff filed an Amended Complaint (ECF No. 7) alleging the same claims as the original Complaint and adding a claim stemming from the COVID-19 pandemic (ECF No 7 at 23, "Eighth Cause of Action"), as well as concerns regarding the design and construction of FCI Elkton, claims regarding the cubicle size, facilities (toilets, washing machines, cubicles), and violations of BOP Program Statements.[1]

Thereafter, Plaintiff moved for a temporary restraining order challenging the administrative remedies available and the conditions with respect to face masks, social distancing, and laundry at Elkton in light of the COVID-19 pandemic. (ECF No. 8). Additionally, Plaintiff moved for assistance in recruiting counsel (ECF No. 10), requested a hearing on the motion for injunctive relief (ECF No. 11), and requested that the court take judicial notice of certain frustrated prisoners at FCI Elkton (ECF No. 13). The government responded in opposition (ECF No. 15), and Plaintiff replied in support (ECF No. 24).

Having reviewed the parties' briefs and the relevant case law, the undersigned recommends that the Court DENY Plaintiff's motions for injunctive relief and for a hearing (Doc. Nos. 8 and 11). Further, the Court DENIES Plaintiff's request for appointed counsel (ECF No. 10) and DENIES his motion to take judicial notice (ECF No. 13).

I.  Injunctive Relief

Plaintiff seeks injunctive relief on the basis of the COVID-19 pandemic and specifically refers this Court to the pending class action litigation challenging BOP's handling of the same in *Wilson v. Williams*, 4:20-cv-0794 (N.D. Ohio 2020). (ECF No. 8 at 3). The remainder of his motion challenges the administrative remedies available and the conditions at FCI Elkton with respect to

---

[1] Defendant states that he has not been served with the Complaint or the Amended Complaint in accordance with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(i).

2

face masks, social distancing, and laundry in light of the COVID-19 pandemic. Plaintiff requests that this Court require the warden at FCI Elkton to: 1)"follow the directives of 28 CFR § 542.13 and .14 and implement a '5' day time frame to investigate, and respond to Informal Remedies (BP-9) at FCI Elkton"; 2) "follow the directives of P.S. 1060.11 et seq. and remove the third bunk added to the Inmate Cubicles measuring '92' square feet at FCI Elkton"; and 3) "follow the directives of the CDC and Ohio State Health Code Department, and reconnect the [h]ot [w]ater to the [w]ashing [m]achines located in the Inmate Housing Units." (ECF No. 8 at 11). Plaintiff also requests the Court to take judicial notice of *Wilson v. Williams*, 4:20-cv-0794 (N.D. Ohio 2020).

"A district court must balance four factors in determining whether to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393, at *3 (6th Cir. July 9, 2020) (quotation marks and citations omitted). "These factors 'are to be balanced against each other.'" *Id*. (quoting *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). "However, 'the likelihood of success on the merits often will be the determinative factor.'" *Id.* (quoting *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (citation omitted)). "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Id*. at *4 (alteration in original) (citations omitted). The standard for a temporary restraining order ("TRO") is the same as that for a preliminary injunction. *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Plaintiff asserts that his TRO request relates to his claims labeled as Issues II, IV, and VII of his Amended Complaint. Issue II asserts that FCI Elkton does not have an established time frame

to investigate, respond to, and return informal resolutions sought under the BP-9 form making it nearly impossible to exhaust administrative remedies as required by the PLRA before seeking judicial review. Plaintiff alleges that the failure to establish the time frame for determining informal resolutions violates his due process and denies him access to the court (Plaintiff's Fifth Cause of Action) and violates 28 C.F.R. §542.13 and 543.14 (Sixth Cause of Action).[2] Within Issue IV Plaintiff alleges that housing three inmates in the 92 square feet cubicles violates BOP Policy Statement 1060.11[3] and is contrary to the CDC social distancing guidelines for COVID-19 precautions. (Eighth Cause of Action). Issue VII alleges that the Defendant turned off the hot water running to the laundry machines; thus, preventing the inmates from properly laundering their masks and laundry according to CDC's washing guidelines and in violation of the "Ohio Health Code Standards for an Institutional setting" and the Eighth Amendment. (Eleventh Cause of Action).

To the extent Plaintiff's claims challenge his prison conditions in violation of the Eighth Amendment, those claims are interpreted as *Bivens*[4] claims. Plaintiff also appears to assert claims under the Administrative Procedures Act ("APA"). Regardless of whether brought under *Bivens* or the APA, Plaintiff's claims are subject to the exhaustion requirements of the PLRA. *See Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *Krilich v. Fed. Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir.

---

[2] 28 C.F.R. § 542.13 states, in pertinent part, that "[e]ach Warden shall establish procedures to allow for the informal resolution of inmate complaints" and 28 C.F.R. § 542.14 addresses the deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request by an inmate.

[3] Program Statement 1060.11, Rated Capacities for Bureau Facilities, dated June 30, 1997, updated October 30, 2017, https://www.bop.gov/policy/progstat/1060_011_cn-1.pdf (last visited 8/13/2020).

[4] *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

2003) (citing 42 U.S.C. § 1997e(a) (Supp.2003) ("the APA falls within the broad sweep of claims subject to the exhaustion requirements of the PLRA").

Plaintiff has not met his obligation to exhaust his administrative remedies. FCI Elkton's "Inmate Information Handbook" specifies the procedures and timeline for resolving inmate issues at FCI Elkton.[5] The handbook states:

> The first step of the Administrative Remedy procedure is to attempt an informal resolution. If the issue cannot be informally resolved, the Counselor will issue a BP-229 (BP-9) form (usually within 48 hours of the time the inmate approached the employee with the problem.) The inmate will return the completed BP229 to the staff member designated by the Warden, who will review the material to insure an attempt at informal resolution was made. The BP-229 complaint must be filed within twenty (20) calendar days from the date on which the basis for the incident or complaint occurred, unless it was not feasible to file within that period of time. Institution staff have twenty (20) calendar days to act on the complaint and to provide a written response to the inmate. This time limit for the response may be extended for an additional twenty (20) calendar days, but the inmate must be notified of the extension.[6]

Plaintiff attached copies of several requests for administrative remedies to his motion for TRO. In those requests, he informs that: 1) the commissary has been out of hand sanitizer for over a month (ECF No. 8-1) (dated May 6, 2020); there are no wall mounted soap dispensers in the inmate restrooms (ECF No. 8-2) (dated March 19, 2020); the safety department deducts inspection points on the weekly inspections due to inmates keeping soap dispensers on the sinks in the inmate restrooms (ECF No. 8-3) (dated March 19, 2020); and HAS Dees submitted an untruthful sworn declaration claiming that inmate housing units are receiving recreation in the recreational department when, in fact, inmates have been living in the recreation department since April 3,

---

[5] *See Inmate Information Handbook* at 42, https://www.bop.gov/locations/institutions/elk/ELK_aohandbook.pdf (last visited 8/14/2020).

[6] *See Inmate Information Handbook* at 42, https://www.bop.gov/locations/institutions/elk/ELK_aohandbook.pdf (last visited 8/14/2020).

2020 (ECF No. 8-4) (dated May 17, 2020). This list of exhibits does not include relief for the matters addressed in his TRO motion. In fact, the record contains no evidence or even allegations that Plaintiff attempted to utilize the administrative process to remedy the items at issue in his request for injunctive relief. Accordingly, Plaintiff has not demonstrated that he has met even the first requirement for exhaustion of his administrative remedies.

Plaintiff, instead, asks the Court to circumvent the exhaustion requirement by challenging the adequacy of the administrative remedy process. Plaintiff essentially asks the court to order the warden to *implement* administrative remedy procedures so that he will be able to exhaust these remedies in anticipation of filing a motion for compassionate release. (*See* ECF No. 8 at 5). It is clear that these procedures already exist. Moreover, this Court has already considered the subject of exhaustion waiver against the backdrop of the COVID-19 health crisis in the context of motions brought 28 U.S.C. § 3582 for compassionate release and found that the exhaustion requirement cannot be waived. *See Bronson v. Carvaljal*, No. 4:20-CV-914, 2020 WL 2104542, at *2 (N.D. Ohio May 1, 2020). Thus, regardless of viewing his claims as falling under *Bivens* or APA case law, failure to exhaust his administrative remedies precludes a review of the merits of Plaintiff's claims.

Even assuming, however, that he has exhausted his remedies, or that there are no available administrative remedies to exhaust, Plaintiff is not likely to succeed on the merits inasmuch as his claims relate to prison conditions at FCI Elkton in light of the COVID-19 pandemic -- the claims at issue in the TRO motion.

In order to succeed on his COVID-related claims, Plaintiff must show that the conditions violate the Eighth Amendment's proscription against cruel and unusual punishment. Claims relating to health concerns by detainees are analyzed using a deliberate-indifference framework.

*Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). That framework calls for proof that detention officials were deliberately indifferent to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). The applicable test has two elements. *Id*. at 834. Plaintiff must first demonstrate that the constitutional deprivation was "objectively, 'sufficiently serious.'" *Id*. Second, he must demonstrate that the detention official knew of the risk and disregarded it. *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

The Sixth Circuit's recent ruling in *Wilson, et al. v. Williams et al.*, controls. 961 F.3d 829 (6th Cir. 2020). There, the Court "vacated the preliminary injunction, holding petitioners had not shown a likelihood of success on the merits of their Eighth Amendment claim, because they had not satisfied the subjective component of the deliberate indifference inquiry." *Cameron v. Bouchard*, No. 20-1469, 2020 WL 3867393, at *6 (6th Cir. July 9, 2020) (citing *Wilson*, 961 F.3d at 845-46). "Fatal to Plaintiffs' claim was the fact that the BOP 'responded reasonably' to the risks presented by COVID-19." *Id*. (quoting *Wilson*, 961 F.3d at 839-40). In *Wilson,* the Sixth Circuit found that FCI Elkton had taken various measures to control the virus, including:

> [I]mplement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Wilson*, 961 F.3d at 840-41.[7]

Plaintiff complains that although FCI Elkton is providing masks, there is no way to properly clean the masks given the lack of hot water; and that despite the lack of wall mounted soap, the inmates are being penalized for having soap dispensers on the sinks; and finally, that the third bunk located in the 92 square feet cubicles makes it impossible to maintain a safe social distance. Similar to the Sixth Circuit's analysis in *Cameron*, supra, "[Plaintiff's] argument at most shows that defendants' response was imperfect. That is not enough to establish deliberate indifference." *Cameron*, 2020 WL 3867393, at *6 (citing *Wilson*, 961 F.3d at 842-43 ("Here, even if the BOP's response has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk, ... such that its response falls below the constitutional minimum set by the Eighth Amendment.")). With respect to the additional bunk in the cubicles, Plaintiff will not likely be able to satisfy his burden of showing that officials left the bunks there out of an objectively (or subjectively) reckless disregard of the risks of COVID-19. The fact that FCI Elkton quarantines any inmate exposed to COVID-19 is strong evidence that they are responding reasonably to the risk posed by the virus. *See Cameron*, 2020 WL 3867393, at *6.

Given the Sixth Circuit's decision in *Wilson*, Plaintiff is also unlikely to succeed on the merits of his Eighth Amendment claims. "[W]hile the harm imposed by COVID-19 on inmates at Elkton 'ultimately [is] not averted,' the BOP has 'responded reasonably to the risk' and therefore

---

[7] Plaintiff's assertion that *Wilson* does not control because he seeks declaratory judgment under 28 U.S.C. § 2201 and not habeas relief under § 2241 (ECF No. 24 at 8) is incorrect. Section 2201 provides a remedy; it does not detail a separate cause of action. The remedy, a declaratory judgment, exists only if a plaintiff is successful on an underlying claim for relief. As explained above, the Court has construed Plaintiff's claims at issue here as either *Bivens* claims or claims under the APA.

8

has not been deliberately indifferent to the inmates' Eighth Amendment rights." *Wilson*, 961 F.3d at 841 (citing *Farmer v. Brennan*, 511 U.S. 825, 844).

Accordingly, the undersigned recommends that the Court deny Plaintiff's motion for TRO and request for a hearing (ECF Nos. 8 and 11).

With respect to Plaintiff's request that the Court take judicial notice of *Wilson v. Williams*, 4:20-cv-0794 (N.D. Ohio 2020), this Court takes judicial notice of the existence of the *Wilson* district court orders, but not for the truth of the factual matters asserted therein.

II.  Judicial Notice

Plaintiff asks this Court to take judicial notice of "numerous frustrated FCI Elkton prisoners regarding overcrowd[ed] conditions and dysfunctional administrative remedy program[.]" (ECF No. 13 at 1). Specifically, he wants the Court to take notice 1) of the construction and dimensions of the prisoner cubicles and housing units including the amount of urinals and toilets; 2) that the administrative remedy program at FCI Elkton is extremely dysfunctional making exhaustion of administrative remedies an impossibility and "facts" supporting his claim of failures in the program; 3) that the washing machines do not have hot water; and 4) of his list of signatures of other prisoners who "are willing to be [] class member[s]" but are unable to exhaust their administrative remedies. (ECF No. 13 at 1-5).

Rule 201 of the Federal Rules of Evidence permits a court, either by motion of a party or on its own motion, to "judicially notice a fact that is not subject to reasonable dispute because it" either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "'Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal

9

evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under [Fed. R. Evid] Rule 201(b).'" *Countrywide Homes Loans, Inc. v. McDermott*, 426 B.R. 267, 273 (N.D. Ohio 2010) (quoting *American Prairie Const. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009)).

The "facts" that Plaintiff seeks to have judicially noticed are not facts, but rather his characterizations of the administrative remedy system at FCI Elkton and the conditions there. They certainly can be disputed, are not generally known within this Court's jurisdiction, and cannot be readily determined using accurate sources. Therefore, the Court DENIES Plaintiff's motion to take judicial notice.

III.     Appointment of Counsel

Plaintiff requests assistance in obtaining counsel pursuant to 28 U.S.C. § 1915(e)(1). As grounds, Plaintiff states that: 1) he is unable to afford counsel; 2) the issues in the case are complex; 3) he is currently incarcerated at FCI Elkton which has been on lock-down since March 27, 2020 because of the COVID-19 pandemic and has limited access to the prison's law library; 4) he reached out to various counsel seeking their assistance but has received no response; and 5) he has limited knowledge of the law.

A district court has the discretion to appoint counsel in a civil proceeding. *See Dudley El v. Michigan Dep't of Corr.*, No. 17-2288, 2018 WL 5310761, at *3 (6th Cir. May 23, 2018). It "is not a constitutional right and is justified only by exceptional circumstances." *Id.* (citations and internal quotation marks omitted). "When determining whether exceptional circumstances exist, courts generally examine the complexity of the factual and legal issues involved and the plaintiff's ability to represent himself. *Id*. (citations and internal quotation marks omitted). "Courts should not appoint counsel when the claims are frivolous or when the chances of success are extremely

slim." *Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (citation and quotation marks omitted).

The Court has carefully reviewed the full record and—seeing nothing exceptional about Plaintiff's circumstances—finds nothing to justify appointment of counsel. Based on the filings, the Court perceives that Plaintiff is capable of representing himself and pursuing, via appropriate mechanisms, relief under the law. The case is not particularly complex and Plaintiff's submissions to the Court express awareness of relevant legal concepts and demonstrate that he is capable of invoking the judicial process and making reasoned argument to support his claims.

**CONCLUSION**

Having reviewed the parties' briefs and the relevant case law, the undersigned recommends that the Court DENY Plaintiff's motions for injunctive relief and for a hearing (Doc. Nos. 8 and 11). The Court DENIES Plaintiff's request for appointed counsel (ECF No. 10) and DENIES his motion to take judicial notice (ECF No. 13).

 DATED: 9/9/2020

                                                    *s/Carmen E. Henderson*
                                                    **Carmen E. Henderson**
                                                    **United States Magistrate Judge**

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).